UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID M.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:23-cv-21823

**OPINION**

**<u>APPEARANCES</u>**:

Samuel Fishman
CHERMOL & FISHMAN, LLC
11450 Bustleton Avenue
Philadelphia, PA 19116

    *On behalf of Plaintiff.*

Erica Adams
Quinn Niblack-Doggett
Special Assistant United States Attorneys
c/o SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION,
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on an Appeal by Plaintiff David M.[1] ("Plaintiff") from a denial of Social Security disability insurance benefits and supplemental security income by the Commissioner of Social Security ("Defendant"). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Administrative Law Judge's ("ALJ") decision.

I.     BACKGROUND

The Court recites herein only those facts necessary for its determination of this Appeal.

    A.  Administrative History

On May 24, 2021, Plaintiff protectively filed a Title XVI application for Supplemental Security Income, and on August 31, 2021, a Title II application for Disability Insurance Benefits, alleging disability beginning on February 28, 2021. (AR 17, 200–18, 231–41). The applications were initially denied on March 11, 2022, and upon reconsideration on May 25, 2022. (AR 17, 64–101). Thereafter, Plaintiff filed a written request for a hearing before an ALJ on June 9, 2022. (AR 17, 129–30). The ALJ held a telephonic hearing on November 1, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (AR 17, 36–61). In a decision dated November 23, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 28–29). That decision became the final decision of Defendant when the Appeals Council declined review on September 14, 2023. (AR 1–3). Plaintiff timely filed this appeal on November 2, 2023 pursuant to 42 U.S.C. § 405(g). (ECF No. 1).

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

### B. Plaintiff's Background and Testimony

At the alleged onset of disability, Plaintiff was 52 years old and living with his mother. (AR 22, 27, 48). He has a Graduate Equivalency Diploma, and previously worked as an industrial truck operator, plumber's helper, PSG technician, and cable installer helper. (AR 26, 40).

As a result of his physical conditions and injuries, Plaintiff alleged disability beginning on February 28, 2021. (AR 17). Plaintiff's initial claims on May 24, 2021 and August 31, 2021 cited the following illnesses, injuries, or conditions: herniated discs, rotator cuff tears in both shoulders, torn meniscus in right knee, chronic obstructive pulmonary disease, and bipolar disorder. (AR 251, 265). During his administrative hearing, Plaintiff testified about the illnesses and conditions identified in his claims. (AR 43–54). He also testified that he has neuroendocrine tumors, experiences daily pain and discomfort throughout his body, and suffers from excruciating back pain when standing or sitting in one place for an extended period of time. (AR 45–48, 53).

### C. Medical History

Plaintiff has been examined by several medical professionals over the last five years, and throughout the pendency of his disability claim. The Court will briefly summarize the relevant medical evidence for the purposes of this appeal. This recitation is not comprehensive.[2]

1. <u>South Jersey Radiology</u>

In February 2020, prior to the alleged onset date, Plaintiff underwent an X-ray of his lumbar spine which revealed evidence of a prior laminectomy and disc space narrowing, and an X-ray of his thoracic spine which revealed mild degenerative changes. (AR 721, 723).

---

[2] The ALJ also found Plaintiff's bipolar I disorder, generalized anxiety disorder, and substance abuse disorder to be severe impairments. (AR 19–20). However, since Plaintiff does not allege that these conditions are impacted by his obesity, they will not be further addressed herein. (Pl. Br., ECF No. 7 at 9).

2. <u>Tiffany Sin, D.O.</u>

Dr. Sin, an emergency room physician, treated Plaintiff on August 2, 2020 for "severe pain" in his right leg following a slip and fall on a neighbor's porch. (AR 699, 703). Dr. Sin noted that Plaintiff appeared "well-developed and normal weight." (AR 703). During this emergency room visit, Plaintiff underwent an X-ray of his right knee which Dr. Sin noted revealed "no acute abnormality." (AR 706, 716).

3. <u>Michael Hassman, D.O.</u>

Dr. Hassman, Plaintiff's primary care physician, has treated him since at least February 15, 2021. (AR 476). During a February 2021 visit to discuss pain management, Plaintiff complained of musculoskeletal pain and low back pain. (AR 476, 478). Dr. Hassman observed Plaintiff was suffering from severe pain, had difficulty making certain movements, and exhibited jerkiness at times. (AR 477). Plaintiff was prescribed Percocet and directed to continue taking Ibuprofen. (AR 478). The following month, Plaintiff's physical examination was unremarkable, but he continued to complain of musculoskeletal pain and low back pain. (AR 473–74). Percocet was discontinued at that time, Ibuprofen was continued, and Hydrocodone-Acetaminophen and Carisoprodol were prescribed. (AR 474–75).

From April 2021 to August 2021, Plaintiff saw Dr. Hassman on a monthly basis for follow-up examinations. (AR 462–71). During these visits, Plaintiff complained of pain in both knees, low back pain, and musculoskeletal pain, but Dr. Hassman did not alter his treatment course. (AR 465–71). During his August 2021 visit, Plaintiff complained of musculoskeletal pain, left knee pain, and low back pain. (AR 458–59). During an October 2021 visit, Plaintiff complained of musculoskeletal pain and low back pain. (AR 687–89). During his November and December 2021 visits, Plaintiff complained of musculoskeletal pain, left knee pain, and low back pain. (AR 680–

85). Dr. Hassman did not alter Plaintiff's treatment course at any point. (AR 458–59, 680–89).

During his January 2022 visit, Plaintiff complained of pain in both knees, low back pain, and musculoskeletal pain. (AR 673–75). Notably, he complained of "bad left knee pain," especially with weight bearing. (AR 673). During the same month, an X-ray of Plaintiff's knees revealed stable mild degenerative changes. (AR 697). During his February 2022 and March 2022 examinations, Plaintiff again complained of pain in both knees, low back pain, and musculoskeletal pain, but there is no record of complaints of pain with weight bearing. (AR 667–68, 670–71, 673–75, 677). Again, Plaintiff's treatment course remained unchanged. (AR 667–68, 670–71, 673–75, 677).

4. <u>Alexander Hoffman, M.D.</u>

On February 22, 2022, Plaintiff was examined by Dr. Alexander Hoffman, a consultative examiner. (AR 351). Dr. Hoffman noted that Plaintiff was a "well-developed, well-nourished" individual. (AR 351). He also noted that Plaintiff's flexion at the knee was a "little less than optimal," but he was able to stand on one leg at a time while holding onto a table. (AR 352). However, his balance was not the best, and he was not able to walk very well on either his heels or toes. (AR 352). Although Dr. Hoffman did not make a diagnosis, his summary stated that Plaintiff had a "history of multiple disorders including previous surgeries for [his] rotator cuffs, knees, and [ ] lower back." (AR 352). Additionally, he noted that Plaintiff was able to drive, bathe, and dress himself. (AR 352).

5. <u>Advocare Berlin Medical Associates</u>

In May 2021, Plaintiff underwent bilateral knee X-rays, which revealed mild articular narrowing of the medial femorotibial compartment in both knees. (AR 394–95).

In January 2022, Plaintiff again underwent bilateral knee X-rays, which revealed stable

mild medial compartment osteoarthrosis. (AR 398–99).

## II. JURISDICTION

This Court has original subject matter jurisdiction over this action pursuant to 42 U.S.C. § 405(g) which provides for judicial review of final decisions issued by the Commissioner of Social Security.

## III. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotation omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial

6

evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).

### B. Sequential Evaluation Process

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step

7

> two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original; citations and footnote omitted).

## IV.   **ALJ DECISION**

Plaintiff met the insured status requirements of the Social Security Act through June 30, 2024. (AR 19). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 28, 2021, the alleged disability onset date, and the date of the ALJ's decision. (AR 19).

At Step Two, the ALJ found that Plaintiff suffered from the following medically determinable severe impairments: status-post lumbar laminectomy, lumbar degenerative disc disease, meniscal tear of the right knee, bilateral knee osteoarthritis, chronic obstructive pulmonary disease, obesity, bipolar I disorder, generalized anxiety disorder, and substance use disorder. (AR

8

19–20). The ALJ found that Plaintiff's gastroesophageal reflux disease, non-dysplastic gastric tumor, and status-post bilateral rotator cuff surgery were not severe. (AR 20).

At Step Three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any listing. (AR 20).

At Step Four, the ALJ found that Plaintiff had the RFC to perform light work, subject to various additional stated limitations. (AR 23–26). The ALJ also found that the RFC did not permit the performance of Plaintiff's past relevant work as an industrial truck operator, plumber's helper, PSG technician, or cable installer. (AR 31).

At Step Five, the ALJ, relying on the testimony of the vocational expert ("VE"), found that a significant number of jobs—i.e., approximately 7,000 jobs as a bottle packer; approximately 131,000 jobs as a marker; and approximately 12,000 jobs as an order caller—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile, which the ALJ determined to be consistent with the information contained in the Dictionary of Occupational Titles and the RFC. (AR 28). The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 28).

## V.     DISCUSSION

In his appeal, Plaintiff argues reversal and remand is required because the ALJ erred by failing to properly evaluate the effects of his obesity in combination with his other impairments when assessing his RFC in accordance with Social Security Ruling 19-2p, 84 Fed. Reg. 22924 (May 20, 2019), and *Diaz v. Commissioner of Social Security,* 577 F.3d 500 (3d Cir. 2009). (Pl. Br., ECF No. 7 at 1, 4–9). The Court does not find Plaintiff's argument persuasive and, for the reasons that follow, affirms the ALJ's decision.

Under Social Security Ruling 19-2p, obesity is classified as a severe impairment "[i]f the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities[.]" 84 Fed. Reg. 22924. The ruling notes that an ALJ "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)." *Id.* However, it also notes that "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment" and that the ALJ will "evaluate each case based on the information in the case record." *Id.*

The Third Circuit has held that when conducting such an evaluation "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with [their] impairments, on [their] workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning," but the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016) (quoting *Jones*, 364 F.3d at 505). And "[a]s with any other impairment, [the ALJ] shall explain how [they] reached [their] conclusion on whether obesity causes any limitations." SSR 19-2p, 84 Fed. Reg. 22924. However, remand on grounds to reconsider any limitations related to obesity is only required when it would affect the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005).

First, the Court agrees with Plaintiff that the ALJ's discussion regarding Plaintiff's obesity was insufficient, and a more detailed discussion of Plaintiff's obesity in combination with his other impairments was required. While the ALJ found that Plaintiff's obesity was a severe impairment at Step 2, (AR 19), the remaining portions of her decision at the subsequent steps failed to include

10

any analysis whatsoever as to the impact—if any—of Plaintiff's obesity, which would permit the Court to undertake a meaningful review. Specifically, after Step 2, the ALJ's decision only contained the following references to obesity: (1) at Step Three, the ALJ noted that she "considered the claimant's obesity through this decision under the provisions of SSR 19-2p," (AR 20); and (2) at Step Four, when addressing the RFC, the ALJ noted that Plaintiff is "6 feet 2 inches tall and weighs 260 pounds, calculating to a body mass index of 33.4, indicating obesity" and "experiences the exacerbating effects of obesity on his musculoskeletal condition," (AR 24, 26).

While these statements indicate that the ALJ may have considered Plaintiff's obesity and its impact on his musculoskeletal condition to some extent, they are conclusory in nature and do not provide a sufficient explanation or citations to the medical record as to whether and how Plaintiff's obesity impacted his other impairments, specifically his musculoskeletal conditions. Such conclusory and perfunctory statements do not provide the Court with the necessary analysis that would permit it to undertake a meaningful review of the decision. *Beluch v. Kijakazi*, No. 22-7341, 2023 WL 7014224, at *6 (D.N.J. Oct. 25, 2023) (remanding for further proceedings due to ALJ's failure to include "any *discussion* of the combined effects of the obesity and other impairments" in his decision) (emphasis in original); *Glenda M. v. Comm'r of Soc. Sec.*, No. 22-3137, 2023 WL 6387515, at *5 (D.N.J. Sept. 29, 2023) (finding ALJ's failure to provide "any analysis as to how Plaintiff's obesity does or does not exacerbate [her] impairments" warranted remand for further findings and analysis). Further, while Defendant makes a commendable effort in its brief to provide the Court with an explanation and support from the record of Plaintiff's obesity in relation to his other impairments, this analysis is simply absent from the ALJ's decision and cannot remedy the deficiency in the ALJ's decision. (AR 8–10).

Nevertheless, the Court agrees with Defendant that remand is not warranted as it would not alter the outcome of the case. *See Rutherford*, 399 F.3d at 552–53. First, Plaintiff has not pointed to any objective medical evidence in the record to support an argument that his obesity impacted his ability to work.[3] The record does not include any medical evidence (e.g., treatment notes or medical opinions) indicating that Plaintiff's obesity limits his ability to work or function. Plaintiff's argument is further undermined by his own representations, or lack thereof, as he did not identify obesity as one of the conditions which limits his ability to work in either of his disability claims or during his testimony at the hearing before the ALJ. (AR 36–61, 255, 265).

Second, Plaintiff has not pointed to any objective medical evidence in the record to show that his obesity exacerbated his other impairments. Indeed, the record is silent as to any relationship between Plaintiff's musculoskeletal conditions and his obesity. Specifically, there is no indication from any medical professional that Plaintiff's obesity created any limitation, contributed to, or exacerbated any of his other conditions. Notably, the medical notes prepared by Dr. Hassman, Plaintiff's longtime family physician, do not include any references to or discussions of the effects of Plaintiff's obesity on his other conditions. (*See generally* AR 458–78, 667–85).

Plaintiff offers only one statement to support his argument that remand is necessary because further analysis or consideration of his obesity may have altered the ALJ's decision:

> Plaintiff's obesity, in combination with the [osteoarthritis] affecting his knees and right hip, [degenerative disc disease] of the cervical and lumbar spines, and [chronic obstructive pulmonary disease], could reasonably be expected to limit the amount of standing and walking he can perform, and limit his ability to engage in the prolonged standing and walking required by the full range of light work ("a job is in this category when it requires a good deal of walking or standing").

---

[3] While Plaintiff highlights multiple medical records (e.g., X-ray medical records which reveal disc space narrowing in his lumbar spine, degenerative changes in his thoracic spine, and osteoarthritis in his knee and hip), (Pl. Br., ECF No. 7 at 4–5), these records do not indicate that his weight or obesity impacted his other conditions or ability to engage in light work.

(Pl. Br., ECF No. 7 at 9). However, there is no medical support for this argument in the record.

In sum, while the Court agrees that the ALJ's discussion of Plaintiff's obesity was lacking, Plaintiff has not shown how any additional discussion by the ALJ would alter the outcome of the case. Therefore, under *Rutherford*, remand is not necessary as it would not alter the outcome. *Edca E. v. Comm'r of Soc. Sec.*, No. 20-20557, 2022 WL 950262, at *5 (D.N.J. Mar. 30, 2022) (noting remand is not warranted when a plaintiff cites general legal principles regarding obesity rather than identifying evidence of how their condition affects their ability to work); *William J.-P. v. Kijakazi*, No. 20-18081, 2022 WL 909665, at *8 (D.N.J. Mar. 29, 2022) (finding remand was not warranted, despite the ALJ's failure to provide a discussion regarding plaintiff's obesity that would permit the court to undertake a meaningful review, as remand would not alter the outcome of the case); *Thorne v. Calvin*, No. 13-2139, 2015 WL 3498642, at *5–6 (E.D. Pa. June 3, 2015) (finding remand was not warranted where the plaintiff "failed to point to any evidence in the record that support[ed] a finding that obesity worsened her symptoms or impacted them in any way"); *Suarez v. Astrue*, 996 F. Supp. 2d 327, 332 (E.D. Pa. 2013) (finding remand was not warranted even though the ALJ failed to analyze the impact of plaintiff's obesity because neither plaintiff's medical records nor testimony supported the conclusion that her obesity rendered her unable to work).

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**